REVISED - March 9, 2001

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-20721

_____

Richard William Kutzner,

Petitioner-Appellant,

v.

Gary L. Johnson, Director, Texas Department of Criminal Justice,
Institutional Division,

Respondent-Appellee.

_____

Appeal from the United States District Court
For the Southern District of Texas

_____

February 16, 2001

Before DAVIS, JONES, and DeMOSS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Richard Kutzner has filed a motion for a certificate of
appealability (COA) in this 28 U.S.C. § 2254 capital habeas
proceeding alleging two constitutional violations.  For the reasons
that follow, we deny his motion.

I.

Kutzner was convicted of capital murder and sentenced to death
in Texas state court for the murder of Kathryn Harrison.  The facts
relating to Kutzner's offense and his subsequent conviction are as
follows.

Harrison owned a real estate brokerage firm in Montgomery

County, Texas.  On January 22, 1996, Charles Divin, a broker at Harrison's firm, discovered Harrison's body in her office after returning from lunch.  Harrison's hands had been bound with red plastic coated electrical wiring and her ankles bound with a plastic cable tie.  She had been strangled by another plastic cable tie that was secured tightly around her neck.  Harrison's purse had been emptied and turned upside down and a computer keyboard and a video cassette recorder were missing from her office.

Kutzner soon became a suspect in the investigation of Harrison's murder.  Several plastic cable ties, a pair of tin snips, and red plastic coated electrical wiring were found in a search of Kutzner's truck.  More plastic cable ties and red plastic coated electrical wiring were found in Kutzner's home.  The wire found in Kutzner's truck, the wire found in his home, and the wire which had bound Harrison's wrists all bore the same identification number.  The identification numbers showed that all the wire was of the same type and had all been manufactured by Rome Cable of Rome, New York.

Kutzner was arrested and subsequently indicted in the 395th Judicial District Court of Montgomery County, Texas for the capital offense of murdering Kathryn Harrison in the course of committing the offense of robbery. Tex. Penal Code Ann. § 19.03(a)(2) (Vernon 1995).  Kutzner plead not guilty.  In addition to the items noted above which had been found in Kutzner's possession, there was substantial other evidence to establish Kutzner's guilt.

Roy Landry, an associate of Kutzner's, testified that Kutzner had dropped off a video cassette recorder at Landry's home during the last week of January of 1996. The police recovered the video cassette recorder from Landry's home and identified it as the one missing from Harrison's office. Landry also testified that Kutzner had given him a computer keyboard at the same time, but that Kutzner had retrieved it about a week later with the intention of giving it to a woman who worked for Mike Covington. Covington testified that Kutzner brought him a computer keyboard during the latter part of January or the early part of February but that he then retrieved it about a week later. Lela Porch, who knew Kutzner through Covington, testified that Kutzner brought her a computer keyboard in early February of 1996. The police recovered the keyboard from Porch's home and identified it as the one missing from Harrison's office.

Landry also testified that Kutzner told him that he should rob an older woman who worked alone in an office. Landry asked why Kutzner did not do it himself, and Kutzner replied that the office was too close to his home. Other testimony established that Kutzner lived about a mile and a half from Harrison's office. Tommy McDonald, an employee of a local electrical products company, testified that Rome Cable's products were not common in the Montgomery County area. Dale Aikens, for whom Kutzner had worked for a time, testified that Kutzner had commented to him, on three separate occasions, that there were no serial numbers on plastic

cable ties and that they would be good to use if one ever wanted to kill somebody. Finally, Michael Ennis, a forensic scientist with the Federal Bureau of Investigation, testified that the cable ties used to bind Harrison's ankles and to strangle her had been cut with the tin snips recovered from Kutzner's truck.

The jury convicted Kutzner of murder. During the punishment phase of the trial, the state presented evidence that Kutzner had served several years in prison in California for armed robbery in the 1960s, that he had been convicted of theft in Texas in 1984, and that he had been convicted of aggravated robbery four times in Texas in 1985. Finally, the state presented evidence that Kutzner had murdered Rita Sharon van Huss in Harris County under very similar circumstances just two weeks prior to his murdering Harrison. The jury returned affirmative answers to the statutory special issues submitted and the trial judge subsequently sentenced Kutzner to death.

The Texas Court of Criminal Appeals affirmed Kutzner's conviction and sentence on direct appeal. Kutzner v. State, 994 S.W.2d 180 (Tex. Crim. App. 1999). Kutzner did not seek a writ of certiorari from the United States Supreme Court. Kutzner applied for a writ of habeas corpus in state court on November 5, 1998. The state habeas court made extensive findings of fact and law and denied Kutzner's application. Ex Parte Kutzner, No. 97-08-01086-CR-(1) (395th Dist. Ct., Montgomery County, Tex. Mar. 4, 1999). The Texas Court of Criminal Appeals adopted the findings of the

-4-

trial court and also denied Kutzner's application. Kutzner then applied for a writ of habeas corpus from the United States District Court for the Southern District of Texas on January 13, 2000. The district court denied the application and also denied Kutzner a COA. Kutzner v. Johnson, No. H-00-127 (S.D. Tex. July 19, 2000). Kutzner then filed the instant motion for a COA with this court.

## II.

Because Kutzner filed his application for a writ of habeas corpus from the district court on January 13, 2000, his application is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). Lindh v. Murphy, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). To obtain a COA, Kutzner must make, "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the district court has denied an application for a writ of habeas corpus on substantive grounds that means that Kutzner must show that, "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000).

In deciding to grant a COA, we view a petitioner's application through the deferential scheme created by AEDPA. Barrientes v. Johnson, 221 F.3d 741, 771 (5th Cir. 2000). 28 U.S.C. § 2254(d) requires us to defer to a state court's adjudication of a petitioner's claims on the merits unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of,

-5-

clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). A state court's decision will be contrary to clearly established federal law when it reaches a legal conclusion in direct opposition to a prior decision of the United States Supreme Court or when it reaches a different conclusion than the United States Supreme Court on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 1519-20, 146 L.Ed.2d 389 (2000). A state court's decision will be based on an unreasonable application of clearly established federal law when it is objectively unreasonable. Id. at 1521.

In this case, Kutzner argues that he was denied his right to the due process of law, as guaranteed by the Fourteenth Amendment, when the state introduced perjured testimony at his trial. Kutzner also argues that he was denied his right to the due process of law when the state engineered an emotional outburst from a witness who was a close relative of Harrison. The state habeas court considered and rejected each of these claims; in neither case has Kutzner met any of the requirements of 28 U.S.C. § 2254(d).

A.

Kutzner argues first that the state knowingly introduced perjured testimony when it introduced the testimony of Tommy

McDonald that Rome Cable electrical wiring was not common in the Montgomery County area. Kutzner bases his contention on an affidavit by Carl Schmidt, an employee of another local electrical products company, that at least two wholesalers in Conroe, Texas stock Rome Cable electrical wiring and that it is also available at local home improvement stores. Kutzner also relies on a facsimile communication from Rome Cable that states that the company sells approximately 41,000 feet of wire in the Houston market monthly. The state habeas court considered Kutzner's claim and specifically found that McDonald did not commit perjury.

For Kutzner to establish that his right to the due process of law has been violated, he must show (1) the actual falsity of a witness's testimony, (2) that the testimony was material, and (3) that the prosecution knew the witness's testimony was false. Giglio v. United States, 405 U.S. 150, 153-4, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); Fuller v. Johnson, 114 F.3d 491, 496 (5th Cir. 1997); Koch v. Puckett, 907 F.2d 524, 531 (5th Cir. 1990). At most, Kutzner has established that McDonald's opinion about the availability of Rome Cable electrical wiring conflicts with or is inconsistent with the affidavit of Schmidt and the communication from Rome Cable. Conflicting or inconsistent testimony is insufficient to establish perjury. Koch, 907 F.2d at 531. In any event, McDonald's testimony was hardly unequivocal. He stated on cross-examination that his opinion about the availability of Rome Cable products in the Montgomery County area was based on his

-7-

employer not stocking those products; he stated that he did not know if any other firms might stock them. Furthermore, Kutzner has made no showing that this testimony was material in light of the overwhelming evidence of his guilt, or that the prosecution team knew of the testimony's falsity. In sum, Kutzner has made no showing that the state habeas court's resolution of this issue was not eminently reasonable.

B.

Kutzner argues next that the state engineered an emotional outburst from Cynthia Ann Harrison, the daughter-in-law of Kathryn Harrison, during her testimony. Kutzner argues that the prosecutor shocked Cynthia Ann Harrison by showing her a picture of her mother-in-law from the crime scene without any prior warning, that this caused Cynthia Ann Harrison to become hysterically emotional, and that the jury was accordingly prejudiced against him. The state habeas court considered Kutzner's claim and found that Cynthia Ann Harrison's reaction had no effect on the jury's verdict.

For Kutzner to establish that his right to the due process of law has been violated he must show that the actions of the prosecutor so infected the trial with unfairness as to make the resulting conviction a denial of due process. Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)); Guidroz v. Lynaugh, 852 F.2d

-8-

832, 834-5 (5th Cir. 1988). The trial record does show that after being shown the picture of her mother-in-law, Cynthia Ann Harrison became extremely upset. However, it also shows that the jury was removed from the courtroom shortly afterwards and remained outside the courtroom until Cynthia Ann Harrison regained her composure. The trial record also shows that the judge instructed the jury not to be influenced by Cynthia Ann Harrison's reaction to the photograph. Furthermore, affidavits from various courtroom personnel submitted to the state habeas court show that while Cynthia Ann Harrison did begin to cry, she never became hysterical. These affidavits also show that the jury was unable to hear anything after it was removed from the courtroom.[1] As with the first issue raised by Kutzner, the state habeas court's finding that these events had no effect on the jury was eminently reasonable.

## III.

Kutzner has not made a substantial showing of the denial of a constitutional right. Therefore, we DENY his motion for a certificate of appealability.

MOTION DENIED.

---

[1] We do not suggest that Kutzner has established that the prosecutor deliberately engineered this outburst from Cynthia Ann Harrison. We simply follow the analysis of the state habeas court on this issue.