IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-10034
_____


VINCENT EDWARD COOKS,

                                        Petitioner-Appellant,

versus

GARY L. JOHNSON, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION

                                        Respondent-Appellee.

_____

Appeal from the United States District Court for the
Northern District of Texas
USDC No. 3:96-CV-1380
_____

July 12, 2001

Before JOLLY, DeMOSS, and STEWART Circuit Judges.

PER CURIAM:[*]

    Vincent Edward Cooks, with the death penalty hanging over his

head, has filed a motion for a certificate of appealability ("COA")

in this 28 U.S.C. § 2254 habeas proceeding.  He alleges that four

constitutional violations occurred during the proceedings in the

Texas trial court: (1) that he was denied the presumption of

innocence and a fair trial because he was shackled during trial,

_____

    [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

(2) that he was denied effective assistance of counsel because counsel failed to make a sufficient record that he was shackled during trial, (3) that he was denied effective assistance of counsel because counsel failed to present alibi evidence, and (4) that the in-court identification should therefore have been excluded because pre-trial lineups were impermissibly suggestive. Because we conclude that Cooks has not made a substantial showing of the denial of a constitutional right, we affirm the district court's denial of his motion for a COA.

I

A

Cooks was convicted of capital murder and sentenced to death by the Texas state court for the murder of Gary D. McCarthy committed in the course of perpetrating a robbery. The facts surrounding the murder and Cooks's subsequent conviction are as follows.

McCarthy was an off-duty police officer who worked part-time as a security guard at Brancatos Grocery in Dallas, Texas. On February 26, 1988, he and Mark DeCardenas, the owner of Brancatos Grocery, went to the bank to withdraw $30,000 in cash, necessary for the store's check cashing service. Upon their return to the store, DeCardenas noticed two men get out of a blue Plymouth, get into an Oldsmobile, and drive to the parking lot across from the grocery. DeCardenas and McCarthy were approached by the two men, who attempted to grab the paper bag that contained the money.

2

McCarthy instructed DeCardenas to run into the store, and pushed him towards the door; DeCardenas dropped the bag of money during the scuffle. As one of the robbers was backing away from the scene, he shot McCarthy, jumped into an Oldsmobile and drove away. McCarthy shot at the retreating Oldsmobile and shattered the back windshield. McCarthy died from the gunshot wounds.

As the robber's car left the scene, two police officers driving in the opposite direction noticed the broken window, and followed the Oldsmobile. Although the occupants of the car had fled by the time the officers caught up to the car, the police recovered a revolver from the floorboard that was later established as the murder weapon.

Earlier, on the morning of the day that the robbery occurred, police officers had stopped and questioned three men in a blue Plymouth parked down the street from Brancatos Grocery. When asked what they were doing, the men responded that they were waiting for a bus. The police officers checked the license plate number, but found nothing out of the ordinary, and went on their way.

After the murder, police officers traced the license plate number of the rented blue Plymouth, obtained during the earlier questioning of the trio. This investigation lead to the arrest of Tracy Stallworth. Information from Stallworth then led to the arrests of Cooks and Tony Ray Harvey. Harvey later testified at Cooks's trial that he, Stallworth and Cooks stole the Oldsmobile used in the robbery, and that Cooks was the gunman.

On March 10, 1988, Cooks was indicted for capital murder for causing the death of McCarthy while in the course of robbing Mark DeCardenas. See Tex. Penal Code. Ann. § 19.03(a)(2). The jury returned a verdict of guilty on December 7, 1988. At the punishment hearing, the jury found that Cooks deliberately caused McCarthy's death when he shot him, that there is a probability that Cooks will commit future violent acts that pose a threat to society, and that Cooks's conduct was not a reasonable response to any provocation of the deceased. The trial court then sentenced Cooks to death by lethal injection, as mandated by Texas Crim. Proc. Code. Ann. art. 37.071(b).

Cooks's case was automatically appealed to the Texas Court of Criminal Appeals, which affirmed his conviction and sentence. See Cooks v. State, 844 S.W.2d 697 (Tex. Crim. App. 1992). The Court of Criminal Appeals denied rehearing in January 1993. Cooks then petitioned the United States Supreme Court for a writ of certiorari, which was denied on June 28, 1993. Cooks filed an application for a state writ of habeas corpus on April 25, 1995. The state trial court entered findings of fact and conclusions of law on February 27, 1996, and the Court of Criminal Appeals denied habeas relief after determining that the trial court's findings were supported by the record.

After obtaining a stay of execution from the federal district court on May 20, 1996, Cooks was appointed state habeas counsel to

4

represent him in federal habeas review and filed a petition for habeas corpus relief in federal court. The case was referred to a magistrate judge who recommended a denial of Cooks's petition for habeas corpus on November 6, 2000. On December 1, 2000, the district court adopted the magistrate's findings, entered a final judgment and denied Cooks's motion for a COA. Cooks then filed this motion for a COA on the claims denied by the district court.

## II

Cooks's application for a federal writ of habeas corpus, filed on April 23, 1997, is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Lindh v. Murphy, 521 U.S. 320 (1997). To obtain a COA, Cooks must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). This substantial showing requires a petitioner to demonstrate that the issues could have been reasonably resolved differently or that the issues presented are adequate to deserve encouragement in further proceedings. Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Because the district court denied Cooks's application for a writ of habeas corpus on the merits, Cooks "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id.

"In deciding to grant a COA, we view the petitioner's application through the deferential scheme created by the AEDPA."

5

<u>Kutzner v. Johnson</u>, 242 F.3d 605, 608 (5th Cir. 2001).[1]  Thus, we defer to a state court's adjudication of a petitioner's claims on the merits unless the state court's determination was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).   See <u>Wheat v. Johnson</u>, 238 F.3d 357, 360 (5th Cir. 2001).  A state court's decision is contrary to clearly established federal law when it reaches a legal conclusion that is in direct opposition to a legal conclusion reached by the Supreme Court or when, after reviewing a set of materially indistinguishable facts, the state court makes a determination different from that of the Supreme Court.  <u>Kutzner</u>, 242 F.3d at 608.  A state court's decision is only based on an unreasonable determination of the facts when it is objectively unreasonable.  <u>Id.</u>

In his application for a COA, Cooks claims that shackling him in front of the jury denied him the presumption of innocence and

---

[1]We note that the COA standard articulated in § 2253, requiring the petitioner to make a substantial showing of a constitutional right, does not seem to incorporate the AEDPA standard under § 2254, which requires deference to the state habeas court's determination.  Our precedent, however, requires that "the determination of whether a COA should issue . . . be made by viewing the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)." <u>Barrientes v. Johnson</u>, 221 F.3d 741, 772 (5th Cir. 2000).  <u>See also</u> <u>Dowthitt v. Johnson</u>, 230 F.3d 733, 740 (5th Cir.2000).

his right to a fair trial under the due process clause of the Fourteenth Amendment. He also claims that he was denied the effective assistance of counsel because his attorneys failed to make a proper record of the shackling. He further claims that counsel failed to present an alibi defense. Lastly, he claims that the pretrial photographic and live line-ups were impermissibly suggestive, and that the witness's in court identification of him was therefore a violation of his due process rights. The Texas courts, and the district court, which adopted the magistrate judge's report and recommendations, considered and rejected these claims.

A

Cooks first argues that his Fourteenth Amendment rights to a presumption of innocence and a fair trial were violated by the trial court's decision to shackle him during both voir dire and trial. Cooks was shackled by a two foot chain that cuffed his feet, which was attached to an ankle bracelet that went up his right leg. On the first day of voir dire, the defense lawyer objected to the shackles, noting that there had been no evidence indicating that Cooks was a security threat. The prosecution stated that the jurors would not be able to see the leg restraints from where they were sitting, that the restraints were covered by Cooks's pants, and that a box and briefcase placed in front of Cooks prevented the jury from seeing the shackles. The trial court overruled Cooks's counsel's objection, and stated that Cooks was

being shackled at the recommendation of the Dallas County deputy sheriffs out of an "abundance of prudence and caution."

On direct appeal, the Court of Criminal Appeals declined to assess whether the circumstances were sufficient to justify the shackling, concluding only that Cooks was not harmed by the shackles because there was no evidence that the jury actually saw the restraints. Cooks v. State, 844 S.W.2d 697, 722 (Tex. Crim. App. 1993). In state habeas court, Cooks included information that two jurors were aware that Cooks was restrained during the trial, but had no evidence that any of the jurors actually saw the shackles. One of the jurors believed that Cooks was handcuffed rather than shackled; the other juror remembered that Cooks needed assistance to stand, presumably because he was shackled. In their affidavits, both jurors stated that they could not directly see the shackles from the jury box, that they assumed restraints were standard procedure in murder cases, and that their awareness of the restraints did not cause them to believe that Cooks was any more likely to be guilty or innocent. The state habeas court found the presence of the shackles harmless, because the shackles were unobtrusive and the affidavits affirmatively demonstrated that the jurors were not prejudiced against Cooks by the presence of the shackles.

A defendant is presumed innocent and therefore, as a general rule, should be presented to the jury in the trappings of innocence during trial. Thus, the Supreme Court has found that certain

8

practices, such as shackling or gagging a criminal defendant or having a defendant dress in prison clothes, may pose a threat to the fairness of the fact-finding process because they are a "constant reminder of the accused's condition." Estelle v. Williams, 425 U.S. 501, 504, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). See also Holbrook v. Flynn, 475 U.S. 560, 568, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986). These practices therefore "must be subjected to 'close judicial scrutiny.'" Id. (citations omitted). The Supreme Court, however, has made clear that trial courts do have the discretion to use physical restraints when confronted with "obstreperous defendant[s]." Illinois v. Allen, 397 U.S. 337, 343-344, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Thus, the Supreme Court, while labeling shackling an inherently prejudicial practice, has never held that the use of shackles necessarily deprives a defendant of the right to a fair trial. Instead, a trial court must balance the defendant's presumption of innocence against "the court's obligation to protect the court and its processes, and to attend to the safety and security of those in the courtroom." United States v. Nicholson, 846 F.2d 277, 279 (5th Cir. 1988). Even if the trial court decision's to allow the defendant to be shackled is erroneous, it is reviewed for harmless error. Wilkerson v. Whitley, 16 F.3d 64, 68 (5th Cir.1994) (citing Buchanan v. Kentucky, 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987)).

Both the state habeas court and the magistrate judge found

9

that any error in forcing the defendant to remain shackled during the proceedings was harmless, because precautionary measures taken by the parties prevented the leg shackles from being visible to the jury, and there was nothing in the juror's affidavits to indicate that the defendant's restraints prejudiced the jury. Although the jurors' statements that their decisions were not affected by their perception of restraints are not entitled to significant weight,[2] the evidence that the restraints were not visible from the jury box supports the state court's determination that the presence of the shackles were harmless. The Supreme Court has found that restraints and other trappings of prison are prejudicial because they constantly remind the jury of the accused's condition; the Court has never found that a defendant is denied the presumption of innocence if the jury does not see these trappings, or has limited exposure to them. Thus, Cooks has failed to make a substantial showing that the presence of shackles denied him his constitutional rights.

B

Cooks next claims that he was denied the effective assistance of counsel because (1) his trial counsel failed to make a record to

---

[2]The Supreme Court has found that "[e]ven though a practice may be inherently prejudicial, jurors will not necessarily be fully conscious of the effect it will have on their attitude toward the accused." Holbrook, 475 U.S. at 570. Thus, the statements of the two jurors who claimed that the sight of restraints did not affect their decisions do not necessarily mean the restraints were harmless.

present the shackling issue on appeal, and (2) his trial counsel erred in not presenting alibi testimony from Cooks's brother that Cooks was in Houston, not Dallas, when the victim was killed. The state habeas courts and the federal magistrate judge denied both of these ineffective assistance claims.

To show ineffective assistance of counsel under the Sixth and Fourteenth Amendments, the accused must satisfy the two pronged test of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the first prong, the defendant must show that counsel's actions fell below an objective standard of reasonableness. For the lawyer's acts and omissions to be unreasonable, they must fall "outside the wide range of professionally competent assistance." <u>Id.</u> at 690. Counsel is strongly presumed to have rendered adequate assistance. <u>Id.</u> Under the second prong, the defendant must show that this deficient performance resulted in actual prejudice to the defendant. <u>Id.</u> at 687. Actual prejudice requires a reasonable probability--a probability sufficient to undermine confidence in the outcome-- that, but for counsel's errors, the result of the proceeding would have been different. <u>Id.</u> at 694.

As noted above, Cooks's counsel objected to Cooks's leg restraints at the start of jury voir dire. Cooks's trial counsel did not question the prospective jurors whether they noticed the restraints because he did not want to unnecessarily draw the jurors's attention to the restraints; however, he did not

11

photograph the courtroom or request a post-trial hearing. Cooks argues that, if his attorney had properly documented the fact that the jurors saw or could have seen the shackles, he would have been granted a new trial on direct appeal.

The state habeas court found that Cooks's counsel was not deficient by failing to make a more detailed record of the shackling, and that Cooks was not prejudiced by his counsel's actions. The magistrate judge found that Cooks did not establish a reasonable probability that the Texas Court of Criminal Appeals would have ruled differently on direct appeal even if counsel had made a more complete documentary record of the shackling.

On direct appeal, the Court of Criminal Appeals denied Cooks's shackling claim because, using harmless error review, the court concluded that Cooks was not harmed "absent evidence that the jury actually saw the shackles." Cooks v. State, 844 S.W.2d at 723. Even if Cooks's counsel had made a full record of the proceedings, however, there is no reasonable probability that the Court of Criminal Appeals would have ruled differently. The affidavits of the jurors and the statements of the prosecutor during trial indicate that the shackles were not visible from the jury box. Thus, photographs of the courtroom would not have affected the court's assessment of the claim. Although the statements from the two jurors provide some evidence that at least those two jurors

12

were somewhat aware that Cooks was restrained,[3] Texas courts have found that the fact that jurors catch inadvertent and momentary glimpses of restraints does not require reversal.  Clark v. State, 717 S.W.2d 910, 919 (Tex.Crim.App. 1986).  Here, where steps were taken that prevented the visibility of the restraints to the jury, there is no reasonable probability that the court's decision would have been different.  In fact, during the state habeas proceedings, the Court of Criminal Appeals specifically held that shackling the defendant was harmless error even though there was evidence that two jurors were aware of restraints.  Cooks has not made a substantial showing that he was denied the effective assistance of counsel because his counsel failed to make a complete record of the shackling.

Cooks also fails to make a substantial showing that he was denied the effective assistance of counsel because his counsel failed to introduce alibi evidence.  At the state habeas level, Cooks introduced an affidavit from a defense investigator stating that he had interviewed Cooks's brother, Timothy Hearne, who said that Cooks was in Houston, not Dallas, at the time of the murder. Cooks's brother also claimed that he was in Dallas at the time of the trial and was available to testify.  In response, the State submitted an affidavit from one of Cooks's trial lawyers.  Cooks's

---

[3]The investigator reported that one juror was aware that Cooks was shackled because he had difficulty standing up.  The other juror thought that Cooks was handcuffed, which he was not.

13

lawyer said that he had interviewed Hearne, but that Hearne did not seem interested in the trial and did not arrive at Cooks's trial as he was supposed to. The trial lawyer also noted that he advised Cooks that the introduction of an alibi defense might result in extraneous offenses being admitted and that the decision not to call Hearne was trial strategy supported by Cooks.

Under Texas rules of evidence, evidence of extraneous acts can be introduced to rebut an alibi defense. See Wyatt v. State, 23 S.W.3d 18, 25 (Tex.Crim.App. 2000) (describing Rule 404(b) of the Texas Rules of Evidence). At the sentencing phase of the trial, evidence was introduced suggesting that Cooks was involved in two very similar robberies, in which people who were returning to stores from the bank with large sums of money were accosted by an armed robber demanding the money. Because alibi testimony may have allowed the State to introduce this testimony at the guilt stage of the trial, counsel's decision not to introduce the alibi testimony (assuming Hearne had been available) was a reasonable tactical decision, and it therefore falls within the range of practical choices not to be second-guessed. Thus, Cooks has not made a substantial showing that he was denied the effective assistance of counsel because his counsel failed to introduce alibi evidence.

C

As a final claim, Cooks argues that pre-trial lineups were impermissibly suggestive, and that Frank Green's in-court identification resulting from them should therefore have been

14

excluded as a violation of due process. This claim was rejected by the Texas court on direct appeal, as well as by the district court below.

The Supreme Court has held that in the case of an eyewitness identification at trial that follows a pretrial photographic identification, the conviction will only be set aside "if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). "It is the likelihood of misidentification that violates the defendant's right to due process." Neil v. Biggers, 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). This concern over misidentification has resulted in a two part test when considering whether to exclude in-court identification evidence. First, we must determine whether the photo lineup was impermissibly suggestive. Where, as here, the photographic lineup was not preserved by the state and consequently not entered into evidence, there is a presumption that it was impermissibly suggestive. United States v. Honer, 225 F.3d 549, 553 (5th Cir. 2000). Second, we must ask whether, based on the totality of the circumstances, the display posed a substantial likelihood of irreparable misidentification. Simmons, 390 U.S. at 384. "The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of

15

reliability." Manson v. Brathwaite, 432 U.S. 98, 106, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). When assessing the reliability of the identification, the Supreme Court has instructed us to consider the following factors: the opportunity of the witness to view the perpetrator at the time of the crime, the degree of the witness's attention, the accuracy of the witness's prior description of the criminal, the witness's level of certainty at the time of confrontation, and the length of time between the crime and confrontation. Biggers, 409 U.S. at 200-201.

The witness at issue here was Frank Green, the grocery store manager. He saw the events occur through the store window. He was approximately 25 feet from the robbery. He watched the offense for two to three minutes. Immediately after the offense, Green described the offender as being approximately five feet ten inches tall and weighing 210 to 220 pounds; Cooks is six feet three inches tall and 250 to 260 pounds. Green later explained this discrepancy by stating "[w]hen a man is jumping around with a pistol, you can't measure his weight down to a point." On the evening of the offense, Green was shown a photographic lineup. Cooks's picture was not included in this initial lineup, and Green did not pick anyone out of lineup as the offender. Green testified that he tentatively picked out Cooks the next day from a second photo lineup, but did not make a positive identification because he did not want to pick the wrong person. A short time later, Green identified Cooks out of a live lineup. Cooks was the only

16

individual who appeared in more than one of the five to six person lineups.

On direct appeal, the Court of Criminal Appeals held that the trial court did not err in overruling Cooks's objections to Green's in-court identification. The court found that, even if the lineup was impermissibly suggestive, Cooks had failed to demonstrate that Green's testimony was unreliable under the totality of the circumstances. The court noted that Green was in close proximity to and observed the full commission of the offense, that Green identified Cooks with certainty at trial, and that Green testified that he would have been able to identify Cooks in the courtroom without having viewed the pretrial lineups. Cooks, 844 S.W.2d. at 731. The magistrate judge found that the state court ruling was not an unreasonable application of clear Supreme Court precedent. The magistrate judge also observed that Green was extensively cross-examined on both the pretrial lineup and his observation of the crime.

Cooks argues that Green's opportunity for observation during the crime was limited, and occurred while Green was frantically searching the inside of the store for a gun. To establish the unreliability of Green's testimony, Cooks also points to the discrepancy between Green's initial description of the suspect and the description Green gave after having been shown a photograph of Cooks. As the magistrate judge noted, however, Green was cross-examined on these issues and the jury convicted Cooks in spite of

17

other evidence that tended to undermine the reliability of the identification. Although Green was the only eyewitness to identify Cooks out of a live lineup, we cannot say that the state court unreasonably applied clear Supreme Court precedent or made an unreasonable determination of fact by holding that Green's identification––an identification made close in time to the events, based on observing events from 25 feet away, and testimony that the witness was confident he would have been able to make even without the lineup--was sufficiently reliable to pass constitutional muster. Cooks therefore has not made a substantial showing that Green's in-court identification denied him due process.[4]

### III

Thus, for the reasons we have stated, we hold that Cooks has not made a substantial showing of the denial of a constitutional right on any of his claims, and we affirm the district court's denial of his request for a COA.

A F F I R M E D.

---

[4]Although the precise issue is the reliability of eyewitness testimony, for added measure, we would observe that Cooks was identified as the gunman by Harvey, his co-defendant, and by Green, the store manager, and that no claim is made that Cooks did not participate in the robbery. Thus, we cannot say that Cooks made a substantial showing that the jury's and state habeas courts' determination of fact upon which this conviction for capital murder rests was "an unreasonable determination of fact," which would justify the grant of habeas relief.