**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 22, 2009

Charles R. Fulbruge III
Clerk

No. 09-70025

CHRISTOPHER COLEMAN

Petitioner-Appellant

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent-Appellee

No. 09-20630

IN RE:  CHRISTOPHER COLEMAN,

Movant

Before GARZA, DeMOSS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

On September 16, 2009, Texas death row inmate Christopher Coleman filed in this court a motion for leave to file a successive habeas petition and a motion for stay of execution, both of which were denied. *In re Coleman*, No. 09-20586, 2009 WL 2957743 (5th Cir. Sept. 16 2009) (unpublished) (hereinafter "*Coleman I*"). He then filed a Rule 60(b) motion in the district court, seeking relief from the original 2004 judgment denying his federal habeas petition. The district court denied that motion on September 18, 2009, but granted a certificate of appealability. *Coleman v. Thaler*, No. 4:02-CV-3865 (S.D. Tex. Sept. 18, 2009). Execution has been scheduled for the evening of September 22, 2009. Coleman now has two separate causes before this court. First, in Cause No. 09-70025, he has moved for a stay of execution pending the filing of his appeal from the district court's denial of his Rule 60(b) motion. Second, in Cause No. 09-20630, he has moved for leave to file a successive habeas petition and for a stay of execution.

The court begins by determining what claims are properly before it, and through what procedural vehicle they have been brought. The district court denied Coleman's Rule 60(b) motion on two grounds. First, the district court concluded that it was untimely. Second, the district court concluded that, because the motion raised a claim that was not among those that it considered in Coleman's original habeas petition, the Rule 60(b) motion was properly construed as a successive habeas petition. In *Ochoa Canales v. Quarterman*, we discussed Rule 60(b) motions in habeas proceedings:

> In 2005, the Supreme Court held that district courts have
> jurisdiction to consider Rule 60(b) motions in habeas proceedings
> so long as the motion "attacks, not the substance of the federal
> court's resolution of a claim on the merits, but some defect in the

integrity of the federal habeas proceedings." In other words, a Rule 60(b) motion that attacks only a defect in the integrity of the federal habeas proceedings should not be treated as a successive habeas application.

507 F.3d 884, 887 (5th Cir. 2007) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005)). However, a Rule 60 motion that raises a new claim not considered in the original habeas petition is clearly a successive habeas petition. *See Gonzalez,* 545 U.S. at 531 ("Using Rule 60(b) to present new claims for relief from a state court's judgment of conviction—even claims couched in the language of a true Rule 60(b) motion—circumvents AEDPA's [successive petition] requirement . . . ."). The relevant provision of AEDPA vests jurisdiction to consider motions for leave to file a successive habeas petition solely in the courts of appeal. *See* 28 U.S.C § 2244(b)(3)(C). Because Coleman did not attack his state court conviction on *Brady* grounds in his original habeas petition, the district court correctly construed his Rule 60(b) motion as a successive petition. Accordingly, the district court did not have jurisdiction to issue a certificate of appealability from its denial of the Rule 60(b) motion and we will not consider Coleman's motion for a stay of execution in Cause No. 09-70025.[1] For the reasons stated above, we affirm the denial of the Rule 60(b) motion on the ground that it is a successive habeas petition not within the jurisdiction of the district court.

Because the denial of the Rule 60(b) motion is not properly before us, we will address only Coleman's application to file a successive habeas petition in Cause No. 09-20630. Applying the relevant standard, we deny the motion. As we

---

[1] Even were we to consider the appeal as an application to file a successive petition, we would deny it for the same reasons we deny Coleman's application in Cause No. 09-20630.

stated in *Coleman I*, the authority of this court to act on a motion to authorize a successive habeas petition derives from 28 U.S.C § 2244(b)(3)(C):

> The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the applicant satisfies the requirements of this subsection.

In *Reyes-Requena v. United States*, we adopted the Seventh Circuit's definition of "prima facie showing," applying it to successive petitions by both state and federal prisoners:

> "By 'prima facie showing' we understand . . . simply a sufficient showing of possible merit to warrant a fuller exploration by the district court." Therefore, if from the application and its supporting documents, "it appears reasonably likely that the application satisfies the stringent requirements for the filing of a second or successive petition," the application shall be granted.

243 F.3d 893, 898-99 (5th Cir. 2001) (quoting *Bennett v. United States*, 119 F.3d 468, 469-70 (7th Cir. 1997) (omission in original)). These stringent requirements are found in 28 U.S.C. § 2244(b)(2), which mandates that a new claim presented in a successive petition shall be dismissed unless the applicant shows that the claim

> (A) . . . relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Coleman's new motions largely reiterate the arguments he advanced in his earlier application to file a successive petition. *See Coleman I.* However, he now brings forward an affidavit from his co-defendant, Enrique Mosquera. In this affidavit, Mosquera avers that he knew the state's eyewitness, Elsie Prado, before she emigrated to the United States from Colombia and that members of his family were friends with or knew members of Prado's family. He admits to having known one of the victims, Heinar Prado, and says that Elsie Prado was involved in the drug transaction that led to the murders. He avers that he informed police investigators of these relationships during his interrogation. Mosquera does not, however, state that any of Prado's relatives were vulnerable to reprisal, a key contention in Coleman's brief, nor does he exculpate Coleman of the murders.[2]

Coleman argues that this court should stay his execution and permit further factual development by the district court because the prosecution in his criminal trial committed a violation pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), by not revealing that Mosquera and Prado knew each other in Colombia. The Assistant District Attorney who prosecuted Coleman's case avers in an affidavit submitted by the State that she was not aware that Prado and Mosquera knew each other prior to the shootings. In denying his earlier motion, we noted that Coleman had "failed to offer any evidence that the prosecution suppressed evidence that Prado and Mosquera knew each other. Suppression of

---

[2] Coleman's theory is that the relationship between Prado and Mosquera could have influenced her to name Coleman as the shooter rather than Mosquera, either because of bias in his favor or fear that Mosquera's relatives in Colombia would take revenge on her relatives in that country.

evidence is fundamental to a *Brady* claim; there is no due process violation if a prosecutor is not aware of the existence of favorable evidence." *Coleman I*, 2009 WL 2957743, at *3 (citation omitted). Additionally, for a *Brady* violation to have occurred, the undisclosed evidence must satisfy the "materiality" prong of *Brady*, which requires a showing of a reasonable probability of a different result absent the suppression of favorable information. The Supreme Court elaborated on this materiality standard in *Kyles v. Whitley*, explaining that "[a] 'reasonable probability' of a different result is . . . shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.' " 514 U.S. 419, 434 (2005) (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)). As such, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence," *Kyles*, 514 U.S. at 434, or whether, "after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict." *Id.* at 434-35. Rather, the Court emphasized that we are to apply the materiality inquiry to the withheld evidence "collectively, not item by item." *Id.* at 436. Even in the interview transcript reviewed by this court in *Coleman I*, in which Prado says that she knew Mosquera from Colombia, she insists that her identification of Coleman as the shooter was accurate. Further, despite speculation from Coleman that Prado identified him as the shooter out of fear of retribution or misguided loyalty to Mosquera, she nonetheless served as the key witness at Mosquera's criminal trial, which resulted in his life imprisonment.[3] Finally,

---

[3] Even were Coleman's factual allegations coupled with the Mosquera affidavit sufficient to raise a viable *Brady* claim that Coleman's punishment would have been something other than the death penalty, Coleman still would not meet the "actual innocence"

since Coleman was charged under Texas's law of the parties and could have been convicted under that statute whether he was or was not the shooter, *see infra*, the failure to disclose that Prado and Mosquera knew each other does not undermine confidence in the outcome of the trial pursuant to *Kyles*. Under the circumstances, we cannot conclude that Coleman has made a prima facie showing that his conviction was constitutionally infirm under *Brady*.[4]

Further, in *Coleman I*, we noted two additional grounds for denying the motion, both of which foreclose the instant cause. First, Coleman has failed to show that he could not have previously discovered the factual predicate for his claim through the exercise of due diligence long before the eve of execution. As we stated in *Coleman I,* "[b]y Coleman's own admission, it was on June 16, 2003—more than a year prior to the district court's denial of his original habeas petition in September 2004—that his private investigator interviewed Mosquera and learned that Mosquera had known Prado in Colombia." 2009 WL 2957743, at *3. Coleman argues that "it seems somewhat removed from reality to suggest that this information could have been proved any earlier." But he has again

_____

requirement for a successive habeas petition under 28 U.S.C. § 2244(b)(2)(B).

[4] Additionally, for a *Brady* violation to have occurred, the undisclosed evidence must be such that it was not discoverable through due diligence. *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997). While an individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police, *see Kyles* 514 U.S. at 437, *"Brady* does not obligate the State to furnish a defendant with exculpatory evidence that is fully available to the defendant through the exercise of reasonable diligence." *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002) (citing *Rector*, 120 F.3d at 558). Coleman's trial counsel could have investigated the backgrounds of the State's eyewitness and Coleman's two co-defendants prior to trial. Failing that, counsel could have asked Prado on the stand whether she knew either of the co-defendants. Coleman has never argued that Prado was asked this question at trial and perjured herself, which would constitute a *Brady* violation.

failed to show why he did not pursue the factual predicate for this *Brady* claim—that prosecutors suppressed favorable evidence or failed in their duty to learn it and disclose it—prior to the denial of Coleman's original habeas petition, or even prior to filing a successive petition this year.

Second, as we said in *Coleman I*, "even were we to conclude that there was a *Brady* violation, Coleman has not shown by 'clear and convincing evidence' that, but for the suppression of the exculpatory evidence, the jury would not have found him guilty of the underlying offense . . . ." *Id.* There was substantial evidence placing Coleman at the scene as a participant in the underlying transaction, and the new Mosquera affidavit does not challenge any of that evidence. Under Texas's law of the parties, a criminal defendant may be found guilty of an offense actually committed by another if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *See* Tex. Penal Code § 7.02(a)(2) (Vernon 1996). Accordingly, the jury could have found Coleman guilty of capital murder without Prado's testimony. Coleman has not shown that but for the suppression of favorable evidence, he would not have been convicted.

Considering the foregoing, IT IS ORDERED that Coleman's motion for stay of execution in Cause No. 09-70025 is denied because the motion constitutes a successive habeas petition over which the district court had no jurisdiction. IT IS FURTHER ORDERED that his motion for leave to file a successive habeas petition and motion for stay of execution in Cause No. 09-20630 is denied.