BRUCE ZOLLO *v.* COMMISSIONER OF CORRECTION
(AC 31763)

Lavine, Robinson and Lavery, Js.

Argued September 21, 2011—officially released January 31, 2012

*Lori Welch-Rubin*, special public defender, for the appellant (petitioner).

*Kathryn Ward Bare*, assistant state's attorney, with whom, on the brief, were *Mary M. Galvin*, former state's attorney, and *Angela R. Macchiarulo*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

LAVINE, J. The petitioner, Bruce Zollo, appeals following the denial of his petition for certification to appeal from the judgment dismissing his second petition for a writ of habeas corpus. On appeal, the petitioner claims that the second habeas court, *Nazzaro*,

*J.*, (1) abused its discretion by denying his petition for certification to appeal and (2) improperly granted the motion to dismiss his second petition for a writ of habeas corpus (second habeas petition) filed by the respondent, the commissioner of correction. We agree that the habeas court abused its discretion by denying the petition for certification to appeal, but we conclude that the court properly denied the petition for a writ of habeas corpus.

The petitioner was convicted, following a jury trial, of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), sexual assault in a spousal relationship in violation of General Statutes § 53a-70b, attempt to commit sexual assault in a spousal relationship in violation of General Statutes §§ 53a-49 (a) and 53a-70b; *State* v. *Zollo*, 36 Conn. App. 718, 720, 654 A.2d 359, cert. denied, 234 Conn. 906, 660 A.2d 859 (1995); for acts perpetrated against his estranged wife (victim). Id., 721. The criminal trial court, *Hartmere, J.*, sentenced the petitioner to fifty years in the custody of the respondent. *Zollo* v. *Commissioner of Correction*, 93 Conn. App. 755, 756, 890 A.2d 120, cert. denied, 278 Conn. 904, 896 A.2d 108 (2006). The petitioner's sentence was upheld by the sentence review division of the Superior Court. Id.

Following his conviction, the petitioner filed a petition for a writ of habeas corpus, alleging, in part, ineffective assistance of counsel (first habeas petition).[1] The first habeas petition, as amended, was tried on September 23, 2003, before the first habeas court, *Hon. William L. Hadden, Jr.*, judge trial referee. The petition was

[1] Specifically, the petitioner alleged, in relevant part, "ineffective assistance of counsel at trial because his counsel had failed (1) to investigate the case, (2) to cross-examine the state's witnesses adequately, (3) to conduct an adequate defense, (4) to challenge the admissibility of the state's DNA evidence and (5) to preserve for appeal issues regarding the DNA evidence." *Zollo* v. *Commissioner of Correction*, supra, 93 Conn. App. 756.

denied.[2] Id., 755–56. This court dismissed the petitioner's appeal from the denial of his first habeas petition, concluding that Judge Hadden properly concluded that the petitioner had failed to meet the two-pronged test of *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Zollo* v. *Commissioner of Correction*, supra, 93 Conn. App. 757–58.

On September, 13, 2006, the self-represented petitioner filed a second habeas petition. On August 19, 2009, the respondent filed a motion to dismiss the amended second habeas petition, pursuant to Practice Book § 23-29 (2) and (3).[3] Counsel for the parties appeared before Judge Nazzaro (second habeas court) for argument on the motion to dismiss on October 30, 2009.[4] The second habeas court concluded in a memorandum of decision that the second habeas petition constituted a successive petition and granted the

---

[2] Judge Hadden found that the petitioner's trial counsel was a credible witness, but that the petitioner was not a credible witness. *Zollo* v. *Commissioner of Correction*, supra, 93 Conn. App. 757. On the basis of Judge Hadden's "review of the trial court proceedings during the petitioner's criminal trial and the evidence adduced at the hearing on the second amended petition for a writ of habeas corpus, the habeas court concluded that, rather than showing that the petitioner's trial counsel provided ineffective assistance, the evidence suggested that his counsel had done an excellent job of representing the petitioner. Additionally, the court concluded that the petitioner had presented no evidence that had his trial counsel provided ineffective assistance, he was prejudiced so as to leave in question the verdict that had been rendered." Id.

[3] Practice Book § 23-29 provides in relevant part: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that . . . (2) the petition, or a count thereof, fails to state a claim upon which habeas corpus relief can be granted; (3) the petition presents the same ground as a prior petition previously denied and fails to state new facts or to proffer new evidence not reasonably available *at the time of the prior petition* . . . ." (Emphasis added.)

[4] The following exhibits were placed into evidence: the transcript of the trial on the first habeas petition, this court's decision dismissing the petitioner's appeal and our Supreme Court's denial of certification to appeal from the judgment dismissing the first habeas appeal.

respondent's motion to dismiss. Thereafter, the court denied the petitioner's petition for certification to appeal, and the petitioner appealed to this court.

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) *Mejia* v. *Commissioner of Correction*, 98 Conn. App. 180, 185–86, 908 A.2d 581 (2006), appeal dismissed after remand, 112 Conn. App. 137, 962 A.2d 148, cert. denied, 291 Conn. 910, 969 A.2d 171 (2009); see *Lozada* v. *Deeds*, 498 U.S. 430, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991). Although we conclude that the second habeas court abused its discretion by denying the petition for certification to appeal, we conclude that the court properly granted the respondent's motion to dismiss the second habeas petition.

I

The petitioner's first claim is that the second habeas court abused its discretion by denying his petition for certification to appeal because "[j]urists of reason could resolve the motion to dismiss the second petition as

successive differently than Judge Nazzaro" did. We agree with the petitioner that the petition for certification to appeal should have been granted, but for a different reason.

We examine the petitioner's underlying claim that the second habeas court improperly granted the respondent's motion to dismiss to determine whether the court abused its discretion in denying the petition for certification to appeal. See *Mejia* v. *Commissioner of Correction*, supra, 98 Conn. App. 186. The crux of the petitioner's claim is that some jurists may have acceded to the petitioner's request to hold a hearing to determine whether the petitioner's trial counsel conveyed an eighteen year plea offer to him.

"[I]n reviewing a claim of abuse of discretion, we have stated that [d]iscretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." (Internal quotation marks omitted.) *State* v. *Zillo*, 124 Conn. App. 690, 695, 5 A.3d 996 (2010). "In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Internal quotation marks omitted.) *State* v. *Williams*, 65 Conn. App. 59, 84, 782 A.2d 149, cert. denied, 258 Conn. 923, 782 A.2d 1251 (2001).

As the second habeas court pointed out when the parties appeared before it to argue the respondent's motion to dismiss, the issue before the court was a matter of law. See *Abdullah* v. *Commissioner of Correction*, 123 Conn. App. 197, 201, 1 A.3d 1102 ("conclusions

reached by the [habeas] court in its decision to dismiss the habeas petition are matters of law, subject to plenary review" [internal quotation marks omitted]), cert. denied, 298 Conn. 930, 5 A.3d 488 (2010). We agree that a motion to dismiss *may* be decided on the pleadings; see *Young* v. *Commissioner of Correction*, 104 Conn. App. 188, 193, 932 A.2d 467 (2007), cert. denied, 285 Conn. 907, 942 A.2d 416 (2008); and we do not conclude that the second habeas court erred in granting the respondent's motion to dismiss on that basis. Given the factual circumstances of this case; see part II of this opinion; the question of whether the second habeas petition was successive is one that was adequate to deserve encouragement to proceed further. We therefore conclude that the petition for certification to appeal should have been granted.

## II

The petitioner's second claim is that the second habeas court erred by granting the respondent's motion to dismiss the second habeas petition as successive because he is entitled to a hearing pursuant to *Sanders* v. *Commissioner of Correction*, 83 Conn. App. 543, 851 A.2d 313, cert. denied, 271 Conn. 914, 859 A.2d 569 (2004).[5] The respondent disagrees and also argues that the petitioner did not avail himself of certain remedies that were available to him during the first habeas trial. We agree with the respondent.

---

[5] *Sanders* v. *Commissioner of Correction*, supra, 83 Conn. App. 543, stands for the proposition that criminal defendants are entitled to have all plea bargain offers explained to them in a meaningful way and that counsel's failure to convey a plea offer in a meaningful way constitutes the ineffective assistance of counsel. Id., 549–50. Although the petitioner has argued for a "*Sanders* hearing," *Sanders* v. *Commissioner of Correction*, supra, 543, is not relevant to the question of whether a petition for a writ of habeas corpus is successive. The similarly named, but unrelated, case of *Sanders* v. *United States*, 373 U.S. 1, 16, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1963), is, however, relevant to determining whether a petition for a writ of habeas corpus is successive. See footnote 8 of this opinion.

The following facts, taken from the transcript of the petitioner's first habeas trial, underlie the petitioner's claim of ineffective assistance of counsel. The assistant state's attorney cross-examined the petitioner, in part, as follows:

"Q. What if anything did [trial counsel] tell you that the best strategy would be, to plead guilty?

"A. Plead guilty.

"Q. In fact, did [trial counsel] secure a plea bargain for you?

"A. Yes, he did.

"Q. What was that plea bargain?

"A. Seven years.

"Q. Seven years?

"A. I believe, seven years.

"Q. Whose idea was [it] to reject that?

"A. Mine.

* * *

"Q. Halfway through trial after . . . the victim testified, did you then tell [trial counsel], I would like to take the plea bargain offer?

"A. Yes.

"Q. So, the fact that you rejected seven years—

"A. Yes.

"Q.—you went to trial?

"A. Yes.

"Q.—after [the victim] testified, you decided that you liked the plea bargain offer?

"A. Yes.

"Q. What was Judge Hartmere offering at midtrial?

"A. There was none.

"Q. In fact, wasn't there an offer of eighteen years by Judge Hartmere?[6]

"A. No.

"Q. Why didn't you take the plea bargain offer?

"A. There was no offer after that. They were not offering me anything."

In his second habeas petition, as amended on August 5, 2009, the petitioner alleges, among other things, that "[t]he claim in this petition was not raised at trial, direct appeal or [in the first habeas petition] as the facts and circumstances necessary to the claim were unknown and unavailable to petitioner until the [first] habeas trial was heard. Petitioner did not deliberately bypass the issue set out in this petition. . . . In the conduct of petitioner's case at the trial level [trial counsel] rendered to petitioner representation that was ineffective and deficient in that he failed to communicate and effectively explain to petitioner a plea agreement proffered and discussed with [trial counsel] prior to petitioner's conviction. The prosecuting authority provided [trial counsel] a specific term offer at eighteen (18) years incarceration as agreeable to the [s]tate in the petitioner's case. The representation of [trial counsel] as to this plea offer was deficient per the ruling in *Sanders* v.

---

[6] There is no evidence in the record indicating that Judge Hartmere, in fact, put his imprimatur on, or made, such an offer. The petitioner's counsel argues, in essence, that because the question was asked, the respondent must have been aware of an eighteen year offer, and, therefore, such an "offer" must have been made. We do not accept the petitioner's assumption in the absence of evidence that the purported offer was, in fact, made. We note that a question from counsel is not evidence of anything. See, e.g., *State* v. *Martinez*, 95 Conn. App. 162, 182, 896 A.2d 109, cert. denied, 279 Conn. 902, 901 A.2d 1224 (2006); *State* v. *Lasky*, 43 Conn. App. 619, 636, 685 A.2d 336 (1996), cert. denied, 239 Conn. 959, 688 A.2d 328 (1997).

[*Commissioner of Correction*, supra, 83 Conn. App. 543], in that [trial counsel] never communicated the offer to petitioner or did so in such an ineffective and insufficient way or manner so as to effectively be no communication at all." The petitioner also alleged that his first habeas counsel filed a motion for rectification concerning this plea offer, which was denied, and "the issue concerning this plea offer has never been addressed by any court on the merits of the claim."

The respondent filed a motion to dismiss the second habeas petition, arguing that the second habeas petition constitutes "a successive petition and should be dismissed," as it "fails to state new facts or proffer new evidence not available in the [first habeas] action . . . ." Moreover, the respondent argued that the "[p]etitioner has abused the writ by raising, seriatim, the same claims as raised in the prior petition, changing only the factual basis, when the instant claims could have been raised in the [first habeas] petition." The respondent relied on *McCleskey* v. *Zant*, 499 U.S. 467, 494–95, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991) (cause and prejudice analysis); *Iasiello* v. *Manson*, 12 Conn. App. 268, 271–73, 530 A.2d 1075 (prior and present petitions alleged petitioner's guilty pleas were involuntary; only factual bases changed), cert. denied, 205 Conn. 811, 532 A.2d 586 (1987).

The second habeas court granted the motion to dismiss, finding that "[a] plain reading of the issues litigated in the first petition for [a] writ of habeas corpus and the allegations sought to be put forward here do not give rise to a reasonable inference that any new facts or evidence are put forth that otherwise would not have been available at the time of the first habeas with respect to [the] petitioner's trial counsel." The court also found, citing testimony from the first habeas trial, that the issue of plea offers and the petitioner's

insistence to refuse to plea bargain or even consider an offer of seven years was litigated.[7]

The dispositive issue in this appeal is whether the petitioner's second habeas "petition is successive, that is, whether it was founded on the same grounds as those raised in his first petition and, if so, whether the petition is nonetheless supported by newly discovered evidence that was not discoverable at the time of the first habeas trial with the exercise of due diligence." *Carter* v. *Commissioner of Correction*, 109 Conn. App. 300, 305, 950 A.2d 619 (2008). We conclude that the second habeas petition is successive because the petitioner failed to take advantage of the remedies available to him at the time he became aware of the purported plea offer of eighteen years.

A

"The standard of review of a motion to dismiss is . . . well established. In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The conclusions reached by the [habeas] court in its decision to dismiss the habeas petition are matters of law, subject to plenary review. . . . Thus, [w]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct . . . and whether they find support in the facts in the record. . . .

---

[7] During the first habeas trial, the assistant state's attorney cross-examined the petitioner's trial counsel, in part, as follows:

"Q. At one point you secured a plea bargain offer of seven years?

"A. Yes. In this case, we really never plea bargained much. [The petitioner] was never interested in a plea bargain. In this case, it was made clear that [the petitioner] wanted this case to go to trial.

"Q. Did you advise him about this?

"A. Yes, we discussed this I don't know how many times, but we discussed a lot of things. [The petitioner] was never interested in a plea bargain."

"It is well settled that [t]he petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. . . . The principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint." (Citation omitted; internal quotation marks omitted.) *Abdullah* v. *Commissioner of Correction*, supra, 123 Conn. App. 201–202.

"Our Supreme Court has stated that [i]n our case law, we have recognized only one situation in which a court is not legally required to hear a habeas petition. In *Negron* v. *Warden*, [180 Conn. 153, 158, 429 A.2d 841 (1980)], we observed that, pursuant to Practice Book § [23-29], [i]f a previous application brought on the same grounds[8] was denied, the pending application may be dismissed without hearing, unless it states new facts or proffers new evidence not reasonably available at the previous hearing. We emphasized the narrowness of our construction of Practice Book § [23-29] by holding that dismissal of a second habeas petition without an evidentiary hearing is improper if the petitioner either raises new claims or *offers new facts or evidence.* . . . *Negron* therefore strengthens the presumption that, absent an explicit exception, an evidentiary hearing is always required before a habeas petition may be

---

[8] The United States Supreme Court has stated that "[b]y ground, we mean simply a sufficient legal basis for granting the relief sought by the applicant. For example, the contention that an involuntary confession was admitted in evidence against him is a distinct ground for federal collateral relief. But a claim of involuntary confession predicated on alleged psychological coercion does not raise a different ground than does one predicated on alleged physical coercion. In other words, identical grounds may often be proved by different factual allegations. So also, identical grounds may often be supported by different legal arguments . . . or be couched in different language . . . or vary in immaterial respects . . . ." (Citations omitted; internal quotation marks omitted.) *Sanders* v. *United States*, 373 U.S. 1, 16, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1963).

dismissed. . . . [A] petitioner may bring successive petitions on the same legal grounds if the petitions seek different relief. . . . But where successive petitions are premised on the same legal grounds and seek the same relief, the second petition will not survive a motion to dismiss unless the petition is supported by allegations and *facts not reasonably available to the petitioner at the time of the original petition.*" (Emphasis added; internal quotation marks omitted.) *Carter* v. *Commissioner of Correction,* supra, 109 Conn. App. 305–306.

"Under federal and state constitutional law, a determination of whether a hearing on the merits is required on a successive habeas application is within the sound discretion of the court. . . . On appeal, the petitioner bears the two tiered burden of demonstrating that the habeas court abused its broad discretion, and thereby created a miscarriage of justice beyond a mere error that might have entitled him to relief on direct appeal." (Citations omitted; internal quotation marks omitted.) *Tirado* v. *Commissioner of Correction,* 24 Conn. App. 152, 155–56, 586 A.2d 625 (1991). "An applicant must, in other words, show that his application does, indeed, involve a different legal ground, not merely a verbal reformulation of the same ground. *Williams* v. *United States,* 731 F.2d 138, 141 (2d Cir. 1984)." *Iasiello* v. *Manson,* supra, 12 Conn. App. 272.

The petitioner's claim requires us to construe the language of the rules of practice. Practice Book § 23-29 (3) provides that a petition may be dismissed by the court if "the petition presents the same ground as a prior petition previously denied and fails to state new facts or to proffer new evidence not reasonably available *at the time of the prior petition* . . . ." (Emphasis added.)

"The rules of statutory construction apply with equal force to Practice Book rules." *Grievance Committee* v.

*Trantolo*, 192 Conn. 15, 22, 470 A.2d 228 (1984). "Our fundamental objective in interpreting a rule of practice is to ascertain and give effect to the intent of the drafters. . . . The interpretation of the rules of practice presents a question of law, over which our review is plenary." (Citation omitted; internal quotation marks omitted.) *State* v. *Outing*, 298 Conn. 34, 73, 3 A.3d 1 (2010), cert. denied, 562 U.S. 1225, 131 S. Ct. 1479, 179 L. Ed. 2d 316 (2011). The key word in § 23-29 (3) is *at*— "at the time of the prior petition . . . ." The principal definition of the preposition *at* in Webster's Third New International Dictionary, Unabridged (2002) p. 136, is "used as a function word to indicate presence in, on, or near . . . ." We conclude that the language of the rule, "at the time of the prior petition," applies to all proceedings attendant to a petition for a writ of habeas corpus.

On the basis of our plenary review of the record, we conclude that the petitioner's second habeas petition was not founded on a new legal ground, nor does it seek different relief. In the first habeas petition, the petitioner alleged the ineffective assistance of trial counsel and sought the reversal of his conviction. In his second habeas petition, the petitioner alleged the ineffective assistance of trial counsel and sought to have his conviction and sentence vacated. The second habeas petition is founded on the same legal grounds as the first, that is, the ineffective assistance of counsel; see footnote 8 of this opinion; and seeks the same relief. Moreover, given the question posed by the assistant state's attorney about a purported eighteen year plea offer midtrial in the first habeas trial, the petitioner failed to take advantage of the remedies available under such circumstances, e.g., (1) request a continuance to investigate the purported plea offer; see *Pasiakos* v. *BJ's Wholesale Club, Inc.*, 93 Conn. App. 641, 645, 889

A.2d 916 (absent request for continuance, court reasonably could assume plaintiff satisfied with proceeding with trial), cert. denied, 277 Conn. 929, 896 A.2d 101 (2006); (2) request permission to amend his first habeas petition to conform to the proof; see Practice Book § 10-62;[9] *Reddick* v. *Commissioner of Correction,* 51 Conn. App. 474, 476, 722 A.2d 286 (1999) (petitioner received permission to amend petition to conform to proof presented at hearing); or (3) examine his criminal trial counsel about the purported midtrial plea offer. We conclude, therefore, that the second habeas court properly granted the motion to dismiss the petitioner's second habeas petition.

## B

The dissent proposes that the language, "time of the prior petition," in Practice Book § 23-29 (3) be given a bright line meaning, that is, that it be construed to refer to the time at which an action for a writ of habeas corpus is commenced. We respectfully disagree with the dissent's construction of the rule. See part II A of this opinion. The word *commenced* does not appear in Practice Book § 23-29. Courts "are constrained to read a statute as written . . . and we may not read into clearly expressed legislation provisions which do not find expression in its words . . . . [T]his court cannot, by judicial construction, read into legislation provisions that clearly are not contained therein." (Internal quotation marks omitted.) *Vargas* v. *Doe,* 96 Conn. App. 399, 407–408, 900 A.2d 525, cert. denied, 280 Conn. 923, 908 A.2d 546 (2006).

The dissent relies on the dicta[10] in a number of decisions from several of the federal circuit courts of appeal

---

[9] Practice Book § 10-62 provides in relevant part: "In all cases of any material variance between allegation and proof, an amendment may be permitted at any stage of the trial. . . ."

[10] See footnote 13 of this opinion for a discussion of the facts of the federal cases relied on by the dissent.

to support its construction of Practice Book § 23-29. Of great importance is the fact that the language in the principal federal statute[11] addressed in those opinions, 28 U.S.C. § 2244 (b) (2),[12] significantly differs from the language found in Practice Book § 23-29 (3).

Under § 28 U.S.C. § 2244 (b), "a state prisoner may raise a new claim in a second or successive habeas petition in federal district court *only* if a three-judge panel of a United States Court of Appeals first determines that the application makes a prima facie showing that: (A) the petitioner's claim 'relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously

---

[11] A federal writ of habeas corpus is available under a number of different circumstances as codified by the United States Code. See, e.g., *In re Davis*, 565 F.3d 810, 813 (11th Cir. 2009) (28 U.S.C. § 2254 entitled "State custody; remedies in Federal courts"); *Jordan* v. *Secretary, Dept. of Corrections*, 485 F.3d 1351, 1353 (11th Cir.) (same), cert. denied sub nom. *Jordan* v. *McDonough*, 552 U.S. 979, 128 S. Ct. 450, 169 L. Ed. 2d 315 (2007); *Bennett* v. *United States*, 119 F.3d 470, 471 (7th Cir. 1997) (28 U.S.C. § 2255 entitled "Federal custody; remedies on motion attacking sentence").

[12] Section 2244 (b) (2) of title 28 of the United States Code provides in relevant part: "A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless . . . (B) (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence . . . ."

Section 2244 (b) (2) is part of the "Antiterrorism and Effective Death Penalty Act of 1996 [act]. Plainly the statute was designed, among other reasons, to bring some finality and certainty to the seemingly never-ending collateral attack process. According to the legislative history, [the act's] focus was to eliminate both the delay that habeas filings cause in a case and the filing of frivolous habeas claims. . . . Indeed, a common theme throughout the congressional debates was the desire to prevent habeas petitioners from having successive 'bites at the apple.' " (Citation omitted.) *In re Davis*, 565 F.3d 810, 817 (11th Cir. 2009). "The statute contains a gatekeeping mechanism that screens second or successive habeas petitions before they reach the district court. . . . This mechanism closes the doors of the district court to a prisoner who wishes to file a second or successive petition unless and until he obtains advance clearance from the appropriate court of appeals." (Citation omitted.) *Rodriguez* v. *Superintendent, Bay State Correctional Center*, 139 F.3d 270, 272 (1st Cir. 1998).

unavailable,' or (B) it relies on facts that (i) could not have been discovered previously through the exercise of due diligence, and that (ii), if proven, would 'establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.' 28 U.S.C. § 2244 (b) (2) (A)-(B) . . . ." (Emphasis in original.) *In re Davis*, 565 F.3d 810, 816 (11th Cir. 2009).

In construing the statute, the circuit courts of appeal focused on the word *previously*, which does not appear in our Practice Book rule. "[T]he question for § 2244 (b) (2) (B) (ii) purposes is . . . whether [the new factual predicate for the claim] could have been discovered 'previously,' which means at least as late as the time of the filing of the first federal habeas petition." *In re Provenzano*, 215 F.3d 1233, 1236 (11th Cir.) (per curiam), cert. denied, 530 U.S. 1256, 120 S. Ct. 2710, 147 L. Ed. 2d 979 (2000). "We conclude that [the language of the statute] requires us to deny a successive [application] that relies entirely on evidence and constitutional decisions that were available to the applicant during previous . . . proceedings." *In re Williams*, 364 F.3d 235, 239 (4th Cir.), cert. denied, 543 U.S. 999, 125 S. Ct. 618, 160 L. Ed. 2d 457 (2004). Because the language of the federal statute at issue in the cases relied on by the dissent is different from the language of Practice Book § 23-29, we conclude that the federal law is not persuasive.[13]

---

[13] Moreover, the facts of the federal cases are distinguishable from the facts of the case before this court as follows:

In October, 2008, "Troy Anthony Davis . . . filed an application . . . seeking authorization to file a second or successive 28 U.S.C. § 2254 federal habeas petition, raising for the first time a free-standing actual innocence claim." *In re Davis*, supra, 565 F.3d 813. Although Davis alleged newly discovered evidence on the basis of recanted testimony; id., 814; the United States Court of Appeals for the Eleventh Circuit found that Davis had admitted "that virtually every piece of evidence underlying his [*Herrera* v. *Collins*, 506 U.S. 390, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993)] claim was discovered before or *during* [his] first federal habeas proceedings and was submitted to the federal habeas court for consideration [of the other claims he brought in that petition] . . . ." (Citation omitted; emphasis added; internal quota-

tion marks omitted.) *In re Davis*, supra, 819. The fact that some of the evidence was discovered during Davis' first habeas proceeding, in fact, lends support to our analysis of the petitioner's claim in this case.

Keith Lamont Jordan also raised a claim of actual innocence based on newly discovered evidence in his September, 2000, § 2254 habeas petition. *Jordan v. Secretary, Dept. of Corrections*, 485 F.3d 1351, 1353 (11th Cir.), cert. denied sub nom. *Jordan v. McDonough*, 552 U.S. 979, 128 S. Ct. 450, 169 L. Ed. 2d 315 (2007). Jordan later explained that his "substantive claim was not actual innocence but coerced confession . . . ." Id., 1354. The United States Court of Appeals for the Eleventh Circuit concluded that Jordan's claim failed under § 2244 (b) (2) (i) because Jordan knew of the circumstances of his confession at the time he confessed, which was before his criminal trial. Id., 1358–59.

The United States Court of Appeals for the Eighth Circuit concluded that the claim Samuel Lee McDonald wanted to raise in a successive habeas petition "shares the same factual predicate as his prior claim of ineffective assistance of counsel based on counsel's failure to pursue a mental disease or defect defense." *McDonald v. Bowersox*, 125 F.3d 1183, 1185 (8th Cir. 1997).

In *Bennett v. United States*, 119 F.3d 470 (7th Cir. 1997), the United States Court of Appeals for the Seventh Circuit asked whether Donald "Bennett's invocation of *Riggins* [v. *Nevada*, 504 U.S. 127, 112 S. Ct. 1810, 118 L. Ed. 2d 479 (1992)] counts as a new, albeit unmeritorious claim, or is merely the repetition with variations of an old, rejected one—the claim of newly discovered evidence that his conviction was procured by the administration to him of a psychotropic drug. It is the latter. The habeas corpus statute and [28 U.S.C. § 2255] do not define 'claim,' but we take it to bear its usual meaning in federal pleading of a set of facts giving rise to a right to a legal remedy." *Bennett v. United States*, supra, 471–72. The court concluded that although Bennett's theory was new, the claim was not. Id., 472. *"Riggins* was decided long before Bennett filed his previous application for leave to file a section 2255 motion attacking his conviction on the basis of the administration of the psychotropic drug to him." Id.

The issue in *In re Williams*, supra, 364 F.3d 235, was "whether a prisoner may file a successive [application] that reiterates—with additional support—the claims in a previous, unsuccessful [application]." Id., 238. The decision held that "§ 2244 (b) precludes a court of appeals from granting a successive [application] that merely embellishes an earlier motion with citations or allegations that could have been included in the earlier [application]." Id., 240. Billy Williams had filed three § 2244 applications that alleged that he had been convicted of murder on the basis of testimony that had since been recanted. Id., 237–38. An application "that relies entirely on evidence and constitutional decisions that were available to the applicant during previous [application] proceedings"; id., 239; must be denied.

*Rodriguez v. Superintendent, Bay State Correctional Center*, 139 F.3d 270 (1st Cir. 1998), is not a case based on newly discovered evidence. Hector Santiago Rodriguez did not file an application alleging "any fact-based claim . . . ." Id., 273. The United States Court of Appeals for the First Circuit, therefore, focused on § 2244 (b) (2) (A) ("claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the

At least one of the federal cases the dissent relies on appears to support our conclusion that the petitioner's failure to take advantage of the remedies available to him at the time of the habeas trial renders his second petition successive. See *Kutzner* v. *Cockrell*, 303 F.3d 333 (5th Cir.), cert. denied, 536 U.S. 978, 123 S. Ct. 14, 153 L. Ed. 2d 877 (2002). In 2002, Richard William "Kutzner filed a petition in federal district court styled 'Motion for DNA Testing' to form the basis for a motion for authorization to file a successive habeas petition." Id., 335. The United States Court of Appeals for the Fifth Circuit concluded that Kutzner had "not demonstrated that the predicate facts for his claims could not have been discovered previously through the exercise of due diligence . . . ." Id., 337. The facts disclosed that during their investigation of the victim's murder, "the police recovered scrapings of skin from under her fingernails and two strands of hair on her body. The fingernail scrapings and one of the hairs were disclosed to Kutzner before trial. Before trial neither the state nor Kutzner undertook to test either the fingernail scrapings or the hair then known to exist. Kutzner's counsel argued to the jury that the identification of the killer was the sole issue before them and criticized the state for failing to test the nail scrapings and hair and produce DNA evidence that could have revealed the killer's identity. As the district court noted, 'Kutzner knew of the scrapings, blot, and first hair at trial, on appeal, during his state habeas petition and during his federal habeas petition. He never requested its testing." Id., 335–36.

The Court of Appeals found that "[i]t is clear from the exchange with [a witness at trial] that Kutzner

Supreme Court, that was previously unavailable"). The court concluded that "Rodriguez adequately demonstrates that his claim of *Cage* [v. *Louisiana*, 498 U.S. 39, 111 S. Ct. 328, 112 L. Ed. 2d 339 (1990)] error rests on a new rule of constitutional law that was unavailable when he last filed a habeas petition, but he is unable to identify a Supreme Court edict that renders *Cage* retroactively applicable to cases on collateral review." *Rodriguez* v. *Superintendent, Bay State Correctional Center*, supra, 276.

understood that at least one hair, possibly 'a couple,' were collected at the crime scene. To the extent that Kutzner argues that a second hair was suppressed, it appears that [the witness'] memory was somewhat incomplete; however, the issue was not pursued. Kutzner was also aware that fingernail scrapings were gathered but not tested. Further, the cellophane was discussed twice. No evidence was suppressed and trial counsel could have tested any piece of it *at the time of trial.* Kutzner fails to demonstrate that prosecutorial misconduct in this regard prevented him from discovering the factual basis of his successive claims at the time his first habeas petition was litigated." (Emphasis added.) Id., 336. The Court of Appeals' reasoning that Kutzner's trial counsel could have tested the evidence *at the time of trial* supports our conclusion that the petitioner in this case had remedies reasonably available to him at the time of the habeas trial when he was asked if he had been offered an eighteen year plea agreement during his criminal trial.

The construction of Practice Book § 23-29 offered by the dissent is problematic in other ways, as well. Generally, a petition for a writ of habeas corpus is filed by a self-represented petitioner for whom a public defender is later appointed. It is most common for appointed counsel to file an amended petition for a writ of habeas corpus after becoming familiar with the facts of the case. By limiting the facts to those known to the petitioner at the time he or she commences a habeas corpus action, the role of appointed counsel is circumscribed. If new evidence is discovered, habeas counsel may decline to amend the petition as a strategic maneuver, i.e., if the petitioner does not succeed on the allegations of the petition at issue, a successive petition could be commenced on the basis of facts discovered by appointed counsel during the course of representing the petitioner in the initial habeas corpus action. The

dissent's construction of Practice Book § 23-29 would foster the filing of successive petitions, a systemic consequence better avoided.[14]

The judgment of the habeas court denying the petition for a writ of habeas corpus is affirmed.

In this opinion ROBINSON, J., concurred.

LAVERY, J., concurring in part and dissenting in part. I agree with part I of the majority's opinion and respectfully disagree with part II. I dissent because I conclude that the trial court improperly granted the motion to dismiss filed by the respondent, the commissioner of correction.

The following facts are relevant to this discussion. In May, 1993, the petitioner, Bruce Zollo, was convicted, following a jury trial, of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), sexual assault in a spousal relationship in violation of General Statutes § 53a-70b, and attempt to commit sexual assault in a spousal relationship in violation of General Statutes §§ 53a-49 (a) and 53a-70b, and sentenced to a total effective term of fifty years incarceration. *Zollo* v. *Commissioner of Correction*, 93 Conn. App. 755, 755–56, 890 A.2d 120, cert. denied, 278 Conn. 904, 896 A.2d 108 (2006). The petitioner then filed a petition for a writ of habeas corpus, "alleging, inter alia, ineffective assistance of counsel at trial because his counsel had failed (1) to investigate the case, (2) to cross-examine the state's witnesses adequately, (3) to conduct an adequate defense, (4) to challenge the admissibility of the state's DNA evidence and (5) to preserve for appeal

---

[14] We take judicial notice; see *State* v. *Adams*, 117 Conn. App. 747, 749 n.3, 982 A.2d 187 (2009); that the petitioner has pending a petition for a writ of habeas corpus alleging the ineffective assistance of counsel against his first habeas counsel. See *Zollo* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-09-4003283.

issues regarding the DNA evidence." Id., 756. The habeas court held a trial on the petition on September 23, 2003. At that trial, the assistant state's attorney asked the petitioner about an eighteen year midtrial plea bargain offer from the trial court, *Hartmere, J.* The petitioner answered that there was no such midtrial offer. Both parties agree that it was then, during the trial on the first habeas petition, that the petitioner first learned that the trial court may have made a midtrial plea bargain offer.[1] The first habeas petition was denied on July 8, 2004. On January 12, 2005, the petitioner filed a motion for rectification. That motion was denied.

Based on the information learned at the first habeas trial, the petitioner filed a second petition for a writ of habeas corpus, alleging that his trial counsel was ineffective because he failed to convey the midtrial plea bargain offer to him. The respondent filed a motion to dismiss the amended second habeas petition, pursuant to Practice Book § 23-29 (2) and (3). Following a hearing on the motion to dismiss, the second habeas court, *Nazzaro, J.*, concluded that the second habeas petition constituted a successive petition and granted the respondent's motion to dismiss. The petitioner appeals from that judgment to this court. Presently, the petitioner purports that the factual predicate on which the assistant state's attorney based her question constitutes "new evidence not reasonably available at the time of the prior petition" (new evidence) under Practice Book § 23-29 (3). If the offer in fact was made, that means that the petitioner's trial counsel failed to communicate to his client a plea bargain offer, which certainly would support the petitioner's claim of ineffective assistance

---

[1] Whether the offer was in fact made is disputed by the respondent. The majority does "not accept the petitioner's assumption in the absence of evidence that the purported offer was, in fact, made." I believe that the absence of independent evidence is a reason for, not against, a second hearing; the petitioner should be given an opportunity to investigate this claim.

of counsel. *Sanders* v. *Commissioner of Correction*, 83 Conn. App. 543, 549–53, 851 A.2d 313, cert. denied, 271 Conn. 914, 859 A.2d 569 (2004); see also *H. P. T.* v. *Commissioner of Correction*, 127 Conn. App. 480, 488, 14 A.3d 1047 (2011).

In *Sanders*, the petitioner, Thomas Sanders, was charged in the underlying criminal matter with robbery in the first degree, conspiracy to commit robbery in the first degree, carrying a pistol without a permit and assault in the first degree. *Sanders* v. *Commissioner of Correction*, supra, 83 Conn. App. 544. The state made an initial plea bargain offer for fifteen years incarceration in exchange for guilty pleas in that case and another in which the petitioner also had been charged. Id., 544–45. Sanders did not accept that offer. After a trial by jury, Sanders was convicted and received a sentence of fourteen years incarceration. Id., 545. Sanders then brought a petition for a writ of habeas corpus, alleging ineffective assistance of trial counsel for (1) failing to engage meaningfully in plea bargaining and to advise him in a timely manner of the state's position regarding plea negotiations prior to trial, and (2) failing to advise him of his rights to sentence review and appeal. Id., 546. At the habeas trial, the assistant state's attorney who prosecuted Sanders in the underlying criminal matter testified that the state had extended to Sanders a second plea offer of eighteen years incarceration. Id., 545. The second offer included two new pending sexual assault and failure to appear charges in exchange for guilty pleas. Id. The second offer was conveyed during a pretrial conference to Sanders' attorney, who, according to the prosecutor's testimony, left the room and returned shortly and informed him that his client had rejected the offer. Id. Following a trial, Sanders was convicted and sentenced to twenty years incarceration to run consecutively to his prior sentence. Id., 545–46. In his habeas petition, however, Sanders alleged

that he was never informed of the state's second offer and that he would have accepted it if he had been informed of such an offer. Id., 546. Evidence presented at the habeas hearing demonstrated that the petitioner was not in court when the offer was made. Id. Sanders also testified that he had not been informed of the offer. Id. The habeas court concluded that Sanders had been informed of the second offer but determined that the offer had not been meaningfully explained, and, therefore, that the petitioner's attorney had rendered ineffective assistance. Id. The court also concluded that Sanders was prejudiced by this failure and granted the petition for a writ of habeas corpus. This court agreed with the habeas court and, accordingly, affirmed its judgment. Id., 549–53.

The *Sanders* court held that a plea bargain offer must be conveyed *and* meaningfully explained to the defendant and that failure to do so constitutes ineffective assistance of counsel. Similar to *Sanders*, the petitioner here is claiming that his trial counsel failed to communicate a plea bargain offer to him that, if conveyed, he would have accepted. If the fact finder believes that the petitioner would have accepted the offer, and is therefore prejudiced, then the facts presented here clearly fit within those of *Sanders*. The petitioner should have an opportunity to research and investigate the issue.

The proper construction of Practice Book § 23-29 (3) is an issue of first impression for the appellate courts of this state. Practice Book § 23-29 provides in pertinent part: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that . . . (3) the petition presents the same ground as a prior petition previously denied and fails to state new facts or to proffer new evidence not reasonably available at the time of the prior petition . . . ."

"Initially, we set forth the appropriate standard of review for a challenge to the dismissal of a petition for a writ of habeas corpus when certification to appeal is granted.[2] The conclusions reached by the trial court in its decision to dismiss [a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record. . . .

"[T]wo petitions may be brought on the same legal grounds if the two petitions seek different relief. . . . Successive petitions based on the same legal grounds and seeking the same relief are susceptible to a motion to dismiss. . . . *An exception is drawn to this rule if newly discovered facts are the ground of the second petition.* . . . [A] ground is a sufficient legal basis for granting the relief sought . . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *Smith* v. *Commissioner of Correction*, 122 Conn. App. 637, 640–41, 999 A.2d 840 (2010), cert. denied, 300 Conn. 901, 12 A.3d 574 (2011). A claim of ineffective assistance of trial counsel in two habeas petitions, for example, constitutes the same ground. See, e.g., id., 642.

"[I]f a previous application brought on the same grounds was denied, the pending application may be dismissed without hearing, unless it states new facts or proffers new evidence not reasonably available at the previous hearing. We emphasized the narrowness of our construction of Practice Book § 531 [now § 23-29] by holding that dismissal of a second habeas petition without an evidentiary hearing is improper if the petitioner either raises new claims or offers new facts or evidence. . . . *Negron* [v. *Warden*, 180 Conn. 153, 158,

---

[2] This standard is used because the majority and I agree that certification should have been granted.

429 A.2d 841 (1980)] therefore strengthens the presumption that, absent an explicit exception, *an evidentiary hearing is always required before a habeas petition may be dismissed.*" (Emphasis added; internal quotation marks omitted.) *Carter* v. *Commissioner of Correction,* 109 Conn. App. 300, 305–306, 950 A.2d 619 (2008), quoting *Mejia* v. *Commissioner of Correction,* 98 Conn. App. 180, 188–89, 908 A.2d 581 (2006), appeal dismissed after remand, 112 Conn. App. 137, 962 A.2d 148, cert. denied, 291 Conn. 910, 969 A.2d 171 (2009).

Here, I agree with the majority that the second habeas petition is founded upon the same legal ground as the first, namely, ineffective assistance of trial counsel; and that it seeks the same relief as the first, reversal of his conviction. However, the majority ceases its inquiry at this point. The majority ignores the fact that the petitioner still is entitled to file a second habeas petition if he has new evidence that was not reasonably available at the time of the prior habeas petition. The majority is bound by the plain language of the Practice Book, Supreme Court precedent and this court's precedent to proceed to the second step and inquire into whether the facts underlying the question posed by the assistant state's attorney constitutes new evidence that would save the petitioner's second petition. See *Negron* v. *Warden,* supra, 180 Conn. 158; *Smith* v. *Commissioner of Correction,* supra, 122 Conn. App. 641; *Carter* v. *Commissioner of Correction,* supra, 109 Conn. App. 306 ("[A] petitioner may bring successive petitions on the same legal grounds if the petitions seek different relief. . . . But where successive petitions are premised on the same legal grounds and seek the same relief, the second petition will not survive a motion to dismiss unless the petition is supported by allegations and facts not reasonably available to the petitioner at the time of the original petition." [Internal quotation marks omitted.]); see also *Anderson* v. *Commissioner of Correction,* 114 Conn. App. 778, 794, 971 A.2d 766, cert. denied,

293 Conn. 915, 979 A.2d 488 (2009) (same); *Mejia* v. *Commissioner of Correction*, supra, 98 Conn. App. 189.

Had the majority proceeded to the second step as it should have, it would have discovered that the issue presented by this case—whether a fact that first comes to light during the first habeas hearing could constitute "new evidence" to support a second petition—has not been decided by our courts. This is the essential issue presented by this case. The majority's opinion follows the proper line of cases for most of the opinion but then suddenly, and without explanation, switches to its conclusion that the petitioner should have amended the petition or taken advantage of other remedies. The majority's conclusion does not follow its discussion of the law. Although the majority concludes that the petitioner was required to amend his petition or "take advantage of [other] remedies available under such circumstances," it does not cite to any case that has held that such a requirement exists.

The majority relies on *Abdullah* v. *Commissioner of Correction*, 123 Conn. App. 197, 202, 1 A.3d 1102, cert. denied, 298 Conn. 930, 5 A.3d 488 (2010), for the proposition that "[i]t is well settled that [t]he petition for a writ of habeas corpus is essentially a pleading, and, as such, it should conform generally to a complaint in a civil action. . . . The principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations in his complaint." (Citation omitted; internal quotation marks omitted.) I take no issue with this court's holding in *Abdullah*; however, the majority's reliance on it here is misplaced. In *Abdullah*, this court held that recovery on a petition for a writ of habeas corpus, like a complaint in a civil action, is limited to the allegations made in the complaint. *Abdullah* v. *Commissioner of Correction*, supra, 202. As this court stated in *Abdullah*, this is a basic principle

of civil cases. However, the *Abdullah* holding does not apply to this case. The petitioner here is not trying to recover on an allegation that he did not make in his petition. Indeed, the claim on which the petitioner is attempting to recover is explicitly stated in his petition.[3] This court did not hold in *Abdullah* that failure to amend a complaint when new evidence is discovered precludes a habeas petitioner from filing a second petition. The majority does not cite, nor could I find, a case that supports the majority's holding. Simply put, there is no precedent in this state to support the principle that if a petitioner does not amend his petition immediately after becoming aware of new evidence during the habeas trial, he forfeits his ability to file a second petition based on that new evidence.

Furthermore, whether the petitioner should have moved to file an amended petition is immaterial. Although habeas corpus proceedings are civil in nature, they are unique in that they involve the petitioner's liberty and the amount of time the petitioner will be incarcerated. Although habeas proceedings follow most of the same procedures for ordinary civil matters in

---

[3] "In his second habeas petition, as amended on August 5, 2009, the petitioner alleges, among other things, that '[t]he claim in this petition was not raised at trial, direct appeal or [in the first habeas petition] as the facts and circumstances necessary to the claim were unknown and unavailable to petitioner until the [first] habeas trial was heard. Petitioner did not deliberately bypass the issue set out in this petition. . . . In the conduct of petitioner's case at the trial level [trial counsel] rendered to petitioner representation that was ineffective and deficient in that he failed to communicate and effectively explain to petitioner a plea agreement proffered and discussed with [trial counsel] prior to petitioner's conviction. The prosecuting authority provided [trial counsel] a specific term offer at eighteen (18) years incarceration as agreeable to the [s]tate in the petitioner's case. The representation of [trial counsel] as to this plea offer was deficient per the ruling in *Sanders* v. [*Commissioner of Correction*, supra, 83 Conn. App. 543], in that [trial counsel] never communicated the offer to petitioner or did so in such an ineffective and insufficient way or manner so as to effectively be no communication at all.' "

our Superior Courts, the Practice Book supplies a number of separate procedures specific to habeas matters.[4] This includes Practice Book § 23-29 (3), the section that controls the issue in the appeal before us.

This court has never held that evidence that is first discovered by a petitioner during a habeas hearing preempts a second habeas petition brought on the basis of that newly discovered evidence. Although this is an issue of first impression in this jurisdiction, there are two cases that this court has decided that present facts that are comparable, albeit not identical, to those in this case, *Tirado* v. *Commissioner of Correction*, 24 Conn. App. 152, 153–54, 586 A.2d 625 (1991), and *Carter* v. *Commissioner of Correction*, supra, 109 Conn. App. 303–304, both of which cut against the majority's decision. First, in *Tirado*, the petitioner's trial counsel decided not to subpoena an out-of-state alibi witness to testify on behalf of the petitioner, Emisael Tirado. *Tirado* v. *Commissioner of Correction*, supra, 153. Tirado was convicted following a jury trial. Id. The conviction was affirmed by our Supreme Court. Id. Soon thereafter, Tirado filed his first petition for a writ of habeas corpus, alleging ineffective assistance of trial counsel. Id. During a full trial on the matter, the court heard testimony from the petitioner's trial counsel and the witness who was not called to testify at the criminal trial. Id., 153–54. Their testimony indicated that although the witness had been willing to testify at the trial, the trial counsel made a tactical decision not to subpoena him because he did not find him to be a credible witness. The habeas court denied Tirado's petition. Id., 154. Tirado then filed a second petition for a writ of habeas corpus based on a claim of new evidence.

---

[4] Practice Book § 23-21 provides in relevant part: "Except as otherwise provided herein, the procedures set forth in Sections 23-22 through 23-42 shall apply to any petition for a writ of habeas corpus which sets forth a claim of illegal confinement. . . ."

Id. Tirado claimed that the new evidence was from the testimony of the alibi witness that was initially elicited during the first habeas trial. Id. The habeas court dismissed the petition. Id. On appeal, this court held that "[t]he potentially exculpatory testimony was known to this defendant prior to his trial, at the time of his appeal, at the time of the first habeas hearing and during the statutory period allowed for bringing a petition for a new trial." Id., 157.

The present case is clearly distinguishable from *Tirado*, primarily because Tirado knew about the evidence before his criminal trial began; here, however, the new evidence was not known to the petitioner until the assistant state's attorney asked the question during the first habeas trial. Therefore, unlike *Tirado*, the petitioner's new evidence was not reasonably available at the time of the first habeas petition.

What is more important, however, is that this court did not do in *Tirado* what the majority does today. In *Tirado*, this court did not hold that since the testimony came up during the initial habeas hearing, the petitioner must have known about it during the hearing and did not amend his petition or take advantage of other remedies, and therefore his petition was properly denied— as the majority does here. Instead, this court fully examined the time line of the case and pinpointed when Tirado became aware of the "new evidence"; this court determined that he was aware of it before his criminal trial started; and since his criminal trial was before his "prior petition," this court appropriately agreed with the habeas court that the habeas petition properly was denied.

The second case is *Carter* v. *Commissioner of Correction*, supra, 109 Conn. App. 300. It is important to note that in some of this court's past decisions, we have been cavalier in our terminology regarding when, in the

time line of a habeas corpus proceeding, the Practice Book's phrase "at the time of the prior petition" refers. Our decision in *Carter* is particularly illustrative. In that decision, this court stated at two separate points that the phrase was: "at the time of the first habeas *trial*" and " 'reasonably available at the previous *hearing*.' " (Emphasis added.) Id., 305. In truth, neither is correct. Section 23-29 of our Practice Book simply states: "The judicial authority may, at any time, upon its own motion or upon motion of the respondent, dismiss the petition, or any count thereof, if it determines that . . . (3) the petition presents the same ground as a prior petition previously denied and fails to state new facts or to proffer *new evidence not reasonably available at the time of the prior petition* . . . ." (Emphasis added.) It does not define *when* during the prior petition the evidence must not have been available. If the majority means, by repeating these passages from *Carter*, that the *Carter* court meant to make a rule that Practice Book § 23-29 (3) is defined from the time of the habeas hearing or the habeas trial, it is mistaken. Although *Carter* stated it twice, this court unmistakably did not mean it to be taken literally, as even the *Carter* court did not follow it.

In *Carter*, the petitioner, Anthony Carter, raised fourteen claims in his first petition for a writ of habeas corpus, including a claim that the prosecution elicited perjured testimony during his criminal trial. *Carter* v. *Commissioner of Correction*, supra, 109 Conn. App. 302 n.3. After a two day hearing, the habeas court noted that Carter had provided no testimony or exhibits in support of the perjured testimony claim, which precluded meaningful review. Id., 303. The petition, therefore, was denied. Id. Carter then filed a second petition for a writ of habeas corpus. Id., 304. In support of his claim that the prosecution elicited perjured testimony, Carter offered evidence from his first habeas hearing,

including transcribed excerpts of the testimony of two Hartford police detectives and supporting police reports Carter obtained from the Hartford police, allegedly after he had heard the detectives' testimony at his first habeas trial. Id. The habeas court dismissed the petition on its own motion on the ground of res judicata. Id.

On appeal, this court considered whether the petition was supported by newly discovered evidence. Id., 305. It determined that the grounds for relief were the same in both petitions, prosecutorial impropriety and ineffective assistance of counsel. Id., 306. Unfortunately, it found the record to be too inadequate to permit appellate review and did not reach the merits of whether the evidence could have been considered "newly discovered." Id., 307. Specifically, this court stated that, although Carter had claimed that the testimony was new, he did not offer any supporting facts as to why, with the exercise of due diligence, the evidence was not discoverable at the time of the original petition, and he did not provide this court with a transcript of the relevant portions of his first habeas trial. Id. However, in so finding, the court implicitly held that evidence first discovered during a habeas trial—the testimony from the police officers—*could* have met the requirements under Practice Book § 23-29 for "new facts or . . . new evidence not reasonably available at the time of the prior petition . . . ." Importantly, the *Carter* court did not hold that because the evidence came out during the first habeas trial, it was "discovered" by Carter "in the prior petition." In other words, this court implicitly held that just because the evidence came up during the first habeas trial does not preclude a second habeas petition based on that newly discovered evidence. This court implied that had Carter persuasively explained why the testimony was not reasonably available at the

time of his prior petition and provided us with transcripts, it could have found in his favor.

Here, we have a complete record. We have the supporting facts that explain why the petitioner did not include in his first habeas petition the question from the assistant state's attorney concerning the midtrial offer by the court of eighteen years incarceration. We also have the relevant portions of the transcript from the first habeas trial. Therefore, we can get to the merits of whether the facts underlying the question from the assistant state's attorney constitute new evidence under Practice Book § 23-29. As I mentioned above, this is an issue of first impression in Connecticut.

Where Connecticut courts have not addressed a particular issue, we look to other jurisdictions for guidance. *Monti* v. *Wenkert*, 287 Conn. 101, 122, 947 A.2d 261, (2008); *Westchester Fire Ins. Co.* v. *Allstate Ins. Co.*, 236 Conn. 362, 368, 672 A.2d 939 (1996); *Coregis Ins. Co.* v. *Fleet National Bank*, 68 Conn. App. 716, 724, 793 A.2d 254 (2002). I propose that we adopt the standard that many of the United States Circuit Courts of Appeal have set.

Many of the federal Circuit Courts of Appeals that have ruled on this issue have looked to when the petition for habeas corpus was *filed* to determine whether the evidence could have been discovered previously. The Eleventh Circuit Court of Appeals has explicitly held, "What matters under [the federal habeas law][5] is whether [the petitioner], with the exercise of due diligence, could have discovered those facts at the time he *filed* his first federal habeas petition." (Emphasis

---

[5] For our purposes, the phrase used in the federal habeas law, "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence," is essentially equivalent to the phrase that is used in our Practice Book, "new facts or . . . new evidence not reasonably available at the time of the prior petition." Compare 28 U.S.C. § 2244 (b) (2) (B) with Practice Book § 23-29 (3).

added.) *Jordan* v. *Secretary, Dept. of Corrections*, 485 F.3d 1351, 1359 (11th Cir.), cert. denied sub nom. *Jordan* v. *McDonough*, 552 U.S. 979, 128 S. Ct. 450, 169 L. Ed. 2d 315 (2007). The Eleventh Circuit wholly reaffirmed this standard two years later in *In re Davis*, 565 F.3d 810, 819 (11th Cir. 2009) ("[w]hat matters under [28 U.S.C.] § 2244 [b] [2] [B] [i] is whether [the petitioner, Troy Anthony Davis], with the exercise of due diligence, could have discovered [the facts he now presents to us] at the time he filed his first federal habeas petition" [internal quotation marks omitted.]). Other Circuit Courts of Appeals that similarly have looked to when the prior habeas petition was filed to determine whether evidence could have been discovered previously include the First, Fourth, Fifth, Seventh, and Eighth. See *Rodriguez* v. *Superintendent, Bay State Correctional Center*, 139 F.3d 270, 274 (1st Cir. 1998) (Hector Santiago "Rodriguez filed his last habeas petition some six years prior to the Court's opinion in *Cage* [v. *Louisiana*, 498 U.S. 39, 111 S. Ct. 328, 112 L. Ed. 2d 339 (1990)]"); *In re Williams*, 364 F.3d 235, 239 (4th Cir.) ("Significantly, the cause inquiry focused on whether the applicant was prevented from including a particular claim in his *most recent* application. See [*Noble* v. *Barnett*, 24 F.3d 582, 585 (4th Cir. 1994)] (holding that the claims presented in the applicant's third habeas petition were barred by the abuse of the writ doctrine because the applicant 'had full knowledge of the facts central to each of these claims at the time that he filed his *second* petition for a writ of habeas corpus' . . . ." [emphasis in original]), cert. denied, 543 U.S. 999, 125 S. Ct. 618, 160 L. Ed. 2d 457 (2004); *Bennett* v. *United States*, 119 F.3d 470, 472 (7th Cir. 1997) ("*Riggins* [v. *Nevada*, 504 U.S. 127, 112 S. Ct. 1810, 118 L. Ed. 2d 479 (1992)] was decided long before [the petitioner Donald R.] Bennett filed his previous application for leave to file a [motion under 28 U.S.C. § 2255] attacking his conviction on the

basis of the administration of the psychotropic drug to him"); *McDonald* v. *Bowersox*, 125 F.3d 1183, 1186 (8th Cir. 1997) ("To support his claim of a constitutional error, [the petitioner Samuel Lee] McDonald points only to psychiatric evidence that was available in 1986. McDonald filed his initial federal habeas petition in 1989."); cf. *Kutzner* v. *Cockrell*, 303 F.3d 333, 336 (5th Cir.) (noting that because essentially all of the evidence in question was discussed at trial, it therefore could have been discovered at the time of the petitioner's first habeas petition), cert. denied, 536 U.S. 978, 123 S. Ct. 14, 153 L. Ed. 2d 877 (2002).[6]

We should adopt this fair and reasonable rule. "The time of the prior petition" clearly means at the time the prior petition was filed. This is the clear and unambiguous reading of the language in the Practice Book. See *State* v. *Strickland*, 243 Conn. 339, 347, 703 A.2d 109 (1997) ("our Practice Book provisions are interpreted in accordance with the same principles that guide interpretation of our General Statutes"); see also *Roberto* v.

---

[6] The majority considers this case at length, and interprets it to support its "conclusion that the petitioner's failure to take advantage of the remedies available to him at the time of the habeas trial renders his second petition successive." The majority's interpretation is flawed for three reasons. First, the evidence in question in *Kutzner* was available to the petitioner, Richard William Kutzner, before he filed his petition for a writ of habeas corpus, unlike the facts of this case. In this case, the purported new evidence was discovered during the habeas trial. Second, the evidence in question in *Kutzner* was available to Kutzner *before his criminal trial,* also unlike the facts of this case. *Kutzner* v. *Cockrell,* supra, 303 F.3d 336 ("[t]he fingernail scrapings and one of the hairs were disclosed to Kutzner before [the criminal] trial"). Therefore, *Kutzner* does not support the majority's conclusion that evidence first discovered during a trial cannot be used as the basis for a second habeas petition. Third, the passages of *Kutzner* that the majority quotes are from the court's analysis of Kutzner's claim under *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). The standard for establishing a *Brady* claim and the standard for establishing a new evidence claim to support a successive habeas petition are entirely distinct. Furthermore, Kutzner's claim would have failed under my proposed rule as well because the evidence was discoverable by him before he filed his prior habeas petition.

*Honeywell, Inc.*, 33 Conn. App. 619, 637 A.2d 405 ("The rules of statutory construction apply with equal force to Practice Book rules. . . . A basic tenet of statutory construction is that when a statute [or rule of practice] is clear and unambiguous, there is no room for construction." [Internal quotation marks omitted.]), cert. denied, 229 Conn. 909, 642 A.2d 1205 (1994). Under this definition, the petitioner clearly has new evidence that would save the petition from dismissal under Practice Book § 23-29 (3).[7] The petitioner filed the first petition for a writ of habeas corpus on or about September 4, 2002. The respondent does not dispute that the petitioner did not become aware of the possible midtrial plea bargain offer until September 23, 2003. Therefore, the petitioner learned of the potential new evidence more than one year after he had filed his petition for a writ of habeas corpus.

The question from the assistant state's attorney raises a concern that deserves to be investigated to determine whether it actually was based on fact. The petitioner learned that the new evidence might exist toward the end of the habeas trial, which undoubtedly is after the time period intended by the Practice Book's phrase, "the time of the prior petition." The word "petition" clearly refers to a time before the habeas trial. A petition in a habeas case is similar to a complaint in a civil case. We have held that "[t]he petition is in the nature of a pleading . . . . A petition generally conforms to a complaint in a civil action." (Citation omitted.) *Martinez* v. *Commissioner of Correction*, 105 Conn. App. 65, 70,

---

[7] The majority points to Practice Book § 10-62: "In all cases of any material variance between allegation and proof, an amendment may be permitted at any stage of the trial. . . ." Here, however, it should be noted that there was no proof of a midtrial eighteen year offer. The purported eighteen year offer was mentioned as a question put to the petitioner during cross-examination at the end of the first habeas trial, and the petitioner denied ever hearing of such an offer. There was no sworn testimony of the offer or admission by the state that such an offer was ever actually made.

936 A.2d 665 (2007), cert. denied, 285 Conn. 917, 943 A.2d 475 (2008). The petition is the basis on which the trial exists.[8] The trial exists so that the petitioner may prove the allegations of his petition. Consequently, the petitioner could not have included the claim based on the newly discovered evidence in his first habeas petition when it was filed.

For the reasons stated previously, I would reverse the judgment of the habeas court, and, therefore, respectfully dissent.

---

[8] The majority's analysis of this dissent states that the rule that I propose would foster the filing of successive petitions. However, the majority fails to give plain meaning to Practice Book § 23-29 (3). Practice Book § 23-29 specifically covers habeas proceedings. In addition, if there were ten amended petitions filed in the first habeas hearing, any evidence of the midtrial offer of eighteen years would not reasonably have been available at the time of the tenth amended petition because it came out during the trial.